IN RE ESTATE OF RACHEL B. SUPERIOR.
CELIA SATTINGER v. FIRST TRUST COMPANY OF
SAINT PAUL.[1]

October 17, 1941.

No. 32,902.

[1]Reported in 300 N. W. 393.

*Sanborn & Andre,* for appellant.

*Nelson & Mohan, Norman R. Tyre,* and *Irving Levy,* for respondent.

GALLAGHER, CHIEF JUSTICE.

Rachel B. Superior, a resident of St. Paul, died intestate on April 27, 1939, at the age of about 82 years. Probate proceedings were thereafter instituted in Ramsey county. Celia Sattinger of West Los Angeles, California, a distant relative, filed a claim against the estate for $50,000 for services alleged to have been rendered and performed at the instance and request of decedent "consisting of acting as her companion, counselor, chauffeur, preparing and serving her meals, running her errands, nursing, administering medicines, dressing and undressing her, waiting on her, and performing many other necessary duties." The claim was based upon an express promise by decedent to pay claimant "by a bequest in her Will the sum of Fifty Thousand and 00/100 ($50,000.00) Dollars," alleged to be the reasonable value of the services

claimed to have been rendered between June 29, 1929, and April 27, 1939.

The claim was disallowed *in toto* by the probate court. Thereafter claimant appealed to district court, where issues were framed and the case tried to a jury. There claimant elected to rely solely upon *quantum meruit*. A verdict was returned in favor of claimant for $22,000. The trial court denied the motion of the administrator for judgment notwithstanding the verdict, as well as its motion for a new trial, but conditioned the latter upon claimant's consent to a reduction of the verdict to $15,000. She so consented. The administrator appeals from an order denying its motion for judgment *non obstante* or a new trial.

About 1928 Miss Superior and her sister, Jennie Jacob, began spending the winter months in California. Miss Superior had previously met Celia out there and had visited with her. Celia was 25 years old and married when she commenced rendering the services here involved. She had one child and was expecting another. Miss Superior was then about 70 years of age.

On June 28, 1929, Miss Superior, in St. Paul, sent the following telegram to Mr. Sattinger, Celia's husband, in Los Angeles:

"Jennie is in the hospital   Am afraid very sick   I am sick in bed at home   Very much worried about her   Do you want to send Celia not the baby as she will be a great help to us   Do not bring a lot of clothes   Wire answer."

In response to this telegram, Celia went to St. Paul and for about three weeks took care of Miss Superior. She then returned to her home in California. From then until her death in 1939, Miss Superior lived about six months out of each year in California. She suffered from a disease of the heart, tachycardia, which affected her at irregular intervals. Severe attacks were followed by periods of convalescence. There is evidence that from 1934 on she had coronary heart disease, general arteriosclerosis, gall bladder trouble, and considerable difficulty with her eyes. When sick her spirits were depressed.

There is no dispute that Celia spent a good deal of time with Miss Superior while the latter was in California. When Miss Superior was ill, and the jury could find that this was often, Celia read to her, told her stories, combed her hair, manicured her fingernails, put drops in her eyes, and rendered other personal services. When Miss Superior was well they went together on automobile rides. Strong bonds of friendship existed between them. Celia's services could be described as those of a companion and nurse.

The appeal presents two questions: (1) Does the evidence sustain the verdict as reduced; and (2) does the statute of limitations bar the claim except as to the portions covering services rendered two years prior to death? The parties agree that California law governs the case.

■ Where one person performs services for another the law implies a promise on the part of the recipient to pay for them. Mayborne v. Citizens T. & S. Bank, 46 Cal. App. 178, 188 P. 1034; Crane v. Derrick, 157 Cal. 667, 109 P. 31. The present suit is in *quantum meruit*, and recovery may be had even though no express oral agreement is shown. Reeves v. Vallow (Cal. App.) 95 P. (2d) 945.

Appellant argues that no compensable services were rendered because claimant performed only such offices or favors as one friend might do for another, and that therefore the implication of law ordinarily raised by the proof of performance of services vanishes. Dallman v. Frank, 1 Cal. App. 541, 542, 82 P. 564. In that case the services were performed by claimant, a neighbor and friend of decedent, during decedent's last illness. On appeal, a finding of the trial court was affirmed that the services "were performed by the plaintiff voluntarily and gratuitously of her own motion, and were acts of friendship having no pecuniary value." This does not mean that a finding the other way would not also have been affirmed.

However, certain circumstances, as, for example, that the services were rendered for a close relative, may repel the normal legal

implication of a contractual relationship. Winder v. Winder (Cal. Sup.) 114 P. (2d) 347, 350. So, also, where the services are such as one friend might perform for another. Dallman v. Frank, *supra;* Annotation, 54 A. L. R. 548. In such case the law of California is clear that before recovery may be had the circumstances must show that compensation was expected or contemplated by the parties. Winder v. Winder; Mayborne v. Citizens T. & S. Bank; and Crane v. Derrick, *supra.* In Winder v. Winder, the court quoted with approval the Indiana court in Wainwright Trust Co. v. Kinder, 69 Ind. App. 88, 95, 120 N. E. 419, 420, as saying:

"The intention to pay and the expectation of compensation may be inferred from conduct where equity and justice require compensation, as well as from direct communications between the parties. * * * expectation of compensation may coexist with higher motives prompted by affection or the sense of duty."

In the present case, reasonably sufficient evidence was presented to show that compensation was in the minds of both Celia and Miss Superior. A number of statements made by Miss Superior are set out in appellant's brief. From such a one as "Celia Sattinger expects to get paid for what she did for me and for what she is doing for me, and I am going to see that that is taken care of," the jury could reasonably infer that compensation was intended by the parties. The disparity in their ages, the amount of time spent by claimant, the beneficial nature of the services, the need of Miss Superior, and the sacrifices made by Celia are all indicative. The question was for the jury.

Appellant claims that the amount of damages was excessive. It is apparent that an evaluation of the kind of services here involved is no simple matter. There is evidence supporting the verdict, and we cannot say that it is so excessive as to require our interference.

■ Claimant is not a citizen of this state, and, since her cause of action accrued in California, the California statute of limitations (Cal. Code Civ. Proc. § 339) controls. Mason St. 1927, § 9201.

The California statute provides for a two-year time limitation. Appellant contends that the California statute began to run from the inception of the services and that consequently recovery may be had only for the two years immediately preceding death. Corato v. Estate of Corato, 201 Cal. 155, 255 P. 825. In that case (201 Cal. 159, 255 P. 826), the court, after stating that "the record, however, does not disclose when the payment for such services would be made, nor the amount thereof," held that the California statute making the employment presumptively from month to month applied and that the claimant could recover only for the services rendered two years prior to death. That court also declared that its holding did not apply where "it is understood, expressly or by reasonable implication," that payment should be made at the termination of the services (201 Cal. 160, 255 P. 826). Where there are grounds for a reasonable implication that payment is to be made at the termination of the services, and the jury so finds, the statute of limitations does not begin to run until that time. Robinson v. Chapman, 98 Cal. App. 278, 276 P. 1081; Mayborne v. Citizens T. & S. Bank, *supra;* see Corato v. Estate of Corato, *supra; cf.* Lauritsen v. Goldsmith, 99 Cal. App. 671, 279 P. 168. Here, Celia did not request payment during decedent's lifetime. Her services were continuous for ten years up to the latter's death. She testified that she expected to be compensated by a bequest in Miss Superior's will. One witness quoted Miss Superior as saying: "Celia and the Little Sisters of the Poor were the people she must provide for in her will." Without attempting to spell out all the portions of testimony indicating an understanding that claimant was to be compensated at decedent's death, enough appears in the record to make an issue for the jury. *Cf.* Winder v. Winder (Cal. Sup.) 114 P. (2d) 347.

■ Appellant assigns as error the trial court's refusal to instruct the jury to disregard testimony of four nurses as to statements made by decedent during her last illness, on the ground that such statements were made during a period when decedent was mental-

ly incompetent. The appellant showed that Miss Superior had periods of irrationality, but did not show that the statements attributed to her were made during such periods. The matter goes to credibility rather than to admissibility.

The order of the court below is affirmed.

MR. JUSTICE STONE took no part in the consideration or decision of this case.